Good morning, may it please the Court, Your Honor. Philip Mussolino for appellant. My co-counsel, Alan Strasher, is with me at counsel's table. And my clients, Fleur Bresler and Sidney Bresler, are behind. I begin by suggesting to the Court, as we suggest in our briefs, that this is exactly the sort of case, the remaining claims, that normally warrants consideration by the finder of fact on issues of fraud, breach of fiduciary duty, and statutory violations under the Delaware Consumer Fraud Act. And as a consequence, normally warrant consideration by the jury of damages in the nature of punitive damages, attorney's fees, and statutory damages under the Delaware Consumer Fraud Case. As opposed to most of the bootstrapping cases that come out of Delaware, which we respectfully suggest are gatekeeping cases, the allegations of fraud in this case are not unclear. We are clear that Delaware law does prohibit bootstrapping a contract claim into a non-contract claim. Agreed, Your Honor. And without using that terminology, bootstrapping other jurisdictions follow the same procedure. But the context... So you got a pretty good win the last time you were here. We did. Elected on the judgment. And what makes this case, at least it seems to me, the question is whether, in terms of an election of remedies and questions of that nature, is what sort of sua sponte sort of pushed you to try this case in a bifurcated way. But the result of it is you seem to have got a pretty good end result here. I mean, what more do you want out of this case? You know, at some point you would have had to make an election on these remedies. I mean, you can't have both. I mean, the case is pretty clear. You can't have fraud and it's inconsistent, isn't it? He's either telling the truth or he's not telling the truth in some instances. Your Honor, I agree with you that at least with respect to the lack of intent to perform fraud-type claims, that if, in fact, there was an inconsistency between what the jury had to find to find the contract and what we would have to prove to establish our fraud claim, the judgment city would be correct. And judgment city couches the discussion in terms of whether the statements made by Mr. Ianni were true or not true. Well, why wouldn't this be, you know, apart from all the problems with your quasar contract and tort claims, I'm surprised this wasn't resolved on some theory of claim preclusion. It seems to me that the tort suit and the contract suit are alleging the same injury, which was that your client thought that he was purchasing an insurance policy with a one-time payment and without telling him they were subjected him to multiple payments. But that is that same injury that lies at the bottom of the prior suit and this one. And apart from all the other difficulties that you face with this under Maryland law, which mirrors the law of almost every other jurisdiction, I don't understand why it isn't a claim preclusion matter where you couldn't have raised all these things in the earlier suit. Well, they were raised in the earlier suit, Your Honor. I mean, this is not a second suit that followed after the filing of the first. These claims were brought in the original complaint. Well, I mean, of a formal matter, it may not be, but I'm suggesting as a practical matter. But that would be the key, Your Honor, if we bring the claims in the same suit as alternative remedial requests and the court bifurcates sui sponte, whether it's treated as res judicata or collateral estoppel claim preclusion or exclusion or otherwise wouldn't apply here since Well, but the same problem underlies what you're trying to raise here. I mean, I didn't always thought it was fundamental to commercial law that a breach of contract wasn't a tort. Correct, Your Honor. But the case law in Maryland and in Delaware suggested if your tort claims don't arise out of the language of the contract that they are independent and can proceed separately. So long as there's no inconsistent fact. I mean, it's our allegation that the facts can Can I go? Sorry, can I go because you were talking about the Delaware and Maryland law. I understand what you're saying about the bootstrapping cases looking like gatekeeping cases, but I do feel like there's a pretty solid line of Delaware cases saying, even if you could bring a promissory fraud claim in connection with a contract, you would have to identify an injury that was separate from the breach of the contract. And I think the position, your position throughout this litigation has been like the injuries are basically the same, but there are different remedies available on the tort side. But I feel like the Delaware cases say pretty strongly that's not enough. You need a distinct injury. Well, the language Delaware cases use are damages on occasion, injury on occasion. Well, but there's one case where someone said, and I apologize, I don't have the case name in front of me, but specifically, look, I can get punitive damages on the tort side. That's why they're different. And the court said, no, that's not enough. Different remedies is not enough. You need a distinct injury. Is there a distinct injury here? There is a distinct change remedy and a separate set of damages. Okay, but not a distinct injury. In other words, no. In other words, no. Here is what we say. We concede from the beginning that the compensatory damages other than attorney's fees are identical. We've said that from the beginning and the judge recognized that, and that is the essence of the judge's decision. Our position is the Delaware cases consistently say that punitive damages are sufficiently distinct and attorney's fees are sufficiently distinct. I don't really have a case on the Delaware Consumer Fraud Act for punitive damages from Delaware, but we do have one from the Fourth Circuit, which I'll get to in a second. But in AFH, which is a 2013 case out of Delaware, the court specifically denied a motion trying to strike the contract. But to come back to the point that my good colleague Judge Harris made, the fraud claims and the quasi-contract claims in this case are premised entirely. The fraud claims are premised entirely on the failure of a party to live up to a contractual promise, and the promise being the failure to contribute annually to the charitable trust. And so the contract claim are premised on this same failure to live up to a contractual promise. So it doesn't seem to me to be a separate injury here. It's also a little bit hard for me to see how they could be. It's just an interfere that I have, but it goes back to Judge Wynn's question. It's also a little bit hard for me to see how much additional injury and things could be piled on top of a $28 million judgment. I'm not sure. Maybe there's something I'm missing about this case, but I'm just not sure there's room for any additional injury after a judgment. But the same thing could be said, Your Honor, if the trial court hadn't bifurcated, so Esponti bifurcated the cases and the claims had gone forward, and we argued to the jury, as we would have, that they could enforce the statements made by Mr. Ianni, not because Wilmington intended to perform subjectively, but because the statements were made, which is all we had to prove in the first trial. And if we say at the same time, notwithstanding that the objective manifestation of the statements by Mr. Ianni are enforceable, Wilmington secretly at the time had no intention to perform, which is what we've also consistently alleged, had the judge sent both of those claims to the jury at the same time because they are not factually inconsistent, the jury could have done what juries have done and what the Delaware courts and Maryland courts have done in the past and said you can find compensatory damages that are identical for both the fraud claims and the breach of contract claims. You can't award them twice, but you can find the same damages resulted from the different misconduct. And as in the AFH case, which specifically found that the plaintiffs were alleging the same facts and the same compensatory damages that the jury could go ahead and award punitive damages. That was the AFH case. The Frazier case in Maryland was the same thing. It all comes back to this problem of how do the fraud claims differ from the contract claims? And the tort claims differ from the contract claims. And you say, oh, we were prejudiced, we were pushed into this election of claims and election of remedies. But to the extent that you were moved in that direction by the district judge was for a perfectly good reason, which was to prevent a double recovery here. And why did the judge want to prevent a double recovery here? Because he thought that the injuries underlying the two sets of artfully pled claims were really one and the same. And that's what it all keeps coming back to. I appreciate the long history of cases. And we mentioned this in our brief where courts have expressed skepticism, appropriate skepticism of contract claims dressed up as fraud claims in order to enable the plaintiff to make itself whole. And there's a reason for that skepticism. But not for this kind of case, Your Honor. Yes, let me just say this. The reason for this whole idea is if contractual arrangements are subject to a fraud with uncertainty and tort as a medium of litigation is much less framework, much less certain contract claims are. And if contracting parties, good ones and bad ones, are subject to the prospect of punitive damages and tort suits in the wake of a claim for breach, it's going to have a really unfortunate impact upon the basic transactions of commercial life. And, you know, everybody always says, well, theirs is unique and theirs is a narrow exception. But I'm not sure that's true because I think people contract for certainty and they contract to put a limit upon their potential exposure. And most jurisdictions I know, and I don't see any signs to the contrary in Maryland or Delaware, have really taken care not to erode that principle. But AFH accepted that principle and let the fraud claims go forward. Your Honor, I will accept your invitation to explain why this case is unique if I may. It is unique because operating on my suggestion that the bootstrapping cases are gatekeeping functions to address exactly that policy. The bootstrapping cases use adverbs like you can't simply or merely or only urge the court to infer from non-performance the lack of intent to perform. In this case, we have acknowledgments under oath and in their own pleadings by the defendants that they in fact did make the misrepresentations to Charlie. This fraud case, rather than being an attack on to a contract claim, is as strong as the contract claims out of the mouths of the defendant in their own pleadings and their own answers to interrogatories and out of the testimony of their own witnesses. So if the question is, can contract claims, even if they arise out of the same set of facts, be litigated and go to the jury along with fraud claims, the answer is, under the Delaware and under Frazier in Maryland, the answer is yes, so long as you don't fall into that category of cases of the policy that Your Honor is describing and the policy with which we agree is satisfied. Here, the cases that are referenced in Delaware all talk about the making of conclusory allegations to support the fraud claim. Not all, but most talk about that. And they talk about the lack of specific facts here. If there were no contract claim here and the fraud allegations were presented standalone to the jury, as opposed to most of the cases that Your Honor You know, you're trying to draw a line, a clean line between fraud and non-fraud cases, but the point is that the line is not nearly so clean as you're trying to draw it, because you can artfully plead almost any breach of contract case as a fraud case. You can say, oh, the opposing party misrepresented this fact or this fact in connection with the contract. And I went into the contract believing this and believing that. In other words, a breach of contract by its very nature generates ill will between the breaching party and the party accusing of a breach. And as we know, it's that kind of ill will that doesn't just settle for a breach of contract, but wants to tack on a misrepresentation and a fraudulent misrepresentation on top of it all. And so I don't think that the principle just folds as neatly as you suggest or that the line is as clear as you have suggested, when it is so clear that the ill will generated by many breach of contract suits in which relationships began with such promise ended in such disgruntlement and dismay. But to me, that's where the bootstrapping standards come into play. The alternative shouldn't be that clearly established fraud claims cannot be pursued because there is a concomitant contract breach in the case. What that ends up doing is awarding the defendants who concede that they committed a fraud. It immunizes them from punitive damages because in addition to perpetrating a fraud, they also breached a contract related to the fraud. And we say in our brief exactly what Your Honor just said. We understand what the history of these kinds of claims are. But here we have a fraud claim that just as easily could have gone first to the jury. And we believe, based on what we pled, that we didn't just tack on a fraud claim to an oral contract. We laid out all of the details almost entirely, not out of my client's testimony, about what was said to him or what wasn't said to him or what he thought they intended at the time. Almost entirely out of their own admissions and their own statements. In that case, should the breach of contract immunize a defendant who... I think we've chewed the bone and we've given you some extra time. My colleagues have any further questions, I'll let them in. Can I just make two quick points on another subject? We do have a statute of limitations and brief breaches. We can rest on your brief on that. You don't need to. I'd be happy to, Your Honor, but our view is just shortly that those aren't covered by the bootstrapping. That was an alternative ground that they suggested. And different parties also. Okay. Mr. Shea. Good morning, if it's still morning. I'm Jim Shea and I'm here representing Wilmington Trust and two former officers of Wilmington Trust, Mr. Waschel and Mr. Belasek. In late 2003 and early 2004, representatives of Wilmington Trust negotiated with the late Charlie Bressler and his now deceased attorney to purchase premium finance life insurance, which was to provide a tax advantage liquidity to Mr. Bressler's $150 million estate. You know, we've already heard this case. I know you have, Your Honor. Why don't you go straight to the issue at hand here, which seems to be very keen in terms of the contention as to whether the trial judge was proper in not allowing this particular bifurcated part of the trial to go forward. I will, Your Honor. The question is how do we arrive at this point? It's not by inadvertence. It's not by mistake. And it's certainly not by the district court forcing anybody into a position. The first ruling in August of 2013 was suggested for bifurcation under Rule 42B. Judge Mazzetti proposed it because it would create a trial for a single theory, much less confusing, and he could provide an early trial date for that expedited issue and that the trial on contract issues would resolve the entire case. Plaintiff's attorney, in response, said, I'm interested, but give me a few days to think about it. The judge went ahead and entered the order, and the plaintiffs never objected to the bifurcation. Why did they never object? Well, first, they got an early trial date. Second, they were relieved of the difficult prospect of trying a case on alternative and inconsistent theories. So regarding the non-contract claims, the district court relied upon the election of remedies. Give me your perspective in terms of whether he should have relied upon that or whether the Delaware bootstrapping of a contract claim into non-contract. Why doesn't that fit a little better? Well, your honor, there are actually a plethora of doctrines that would block what plaintiffs want to do here. Election of remedies, acceptance of benefits, they've gotten the full $28 million judgment in their bank account. Election of remedies, that's why you're going through this conundrum now, trying to tell us, well, they actually accepted it when the judge proposed it. But if you're doing the bootstrapping, you don't need to go through that. You do not. That's what I'm getting at here, is why wouldn't if we considered this to be within the Delaware law of bootstrapping, improper bootstrapping, why didn't they just cleanly take care of it for you? I know you've got some unpublished, and I don't quite understand what the significance of unpublished cases, but why don't you speak to that? Well, your honor, I will. And that is a clear alternative ground. Judge Mazzetti did recognize the bootstrapping problem with this case. And it warrants a dismissal at this point of their claims completely without getting into any of the other doctrines. And I think very important is something that was said by plaintiff's counsel in one of their first hearings. Judge Mazzetti asked him, what are you trying to get? What do you want? And the response at JA 472 was, I want the benefit of the bargain. My clients want Willington to start overfunding as they agreed. The heart of their case is one of contract. And we have cited no fewer than 14 cases. Perhaps some of them were unpublished. Let's dispense with them. Multiple cases from Delaware and Maryland. You mean the Delaware cases, right? Delaware and Maryland. Delaware hardly publishes anything out of that chance report, doesn't it? Well, there are many cases cited, both published and unpublished, saying you can't turn... Is it precedent in Delaware for a case that's unpublished? Your Honor, those are all available on Westlaw. You know the rules. I mean, if it's published, typically it is precedent. If it's not, it can be used as guidance. And if it's just guidance there, then what is it to us? Guidance of guidance? I mean, I'm trying to understand the import of an unpublished decision. I know the reason you unpublish some decisions sometimes. Some are not ones that we all like to talk about too candidly. And I don't know the reason they do theirs. But when you do have an unpublished case, it does have some, it seems to me, diminished significance than a published one. But that's neither here nor there in terms of determining whether it is bootstrapping. Correct, Your Honor. And I'm willing to forego all the unpublished decisions. But we have decisions from Delaware that were published. Originally in Pinkert were the two cases that you were looking for, Judge Harris, that involved a simple statement that we want punitive damages tacked onto this. And that's not enough to move the case into the tort land from the breach of contract domain that it should be in. Where these alternative theories are mutually exclusive, as they are here, and where at issue is the very same conduct, the very same representations that the representatives of Wilmington Trust made as they negotiated the purchase. Those very same representations are the basis for the fraud. They were, of course, the basis for the contract action. The injury is exactly the same. They want the benefit of the bargain. The compensatory damages fully compensated the benefit of the bargain. That's the very same injury they're seeking here. And what the cases say, in Delaware, in Maryland, and elsewhere, is you cannot turn a contract into a tort by simply alleging promissory fraud or a fraudulent failure to perform. When both the conduct and the injury are the same, it's a breach of contract case. And it's that that led Judge Macedi to isolate out the breach of contract action as a matter of bifurcation, which the plaintiffs agreed to. And they wanted, because it relieved them of having to elect a remedy during the course of that trial. You're trying a case, you've got two alternative theories. That is an important part on this case, is that just as a matter of litigation strategy, the plaintiffs reaped several significant advantages from bifurcation. And can't just bifurcate and offer no objection to the court's calendar and to its scheduling of a trial, get the earlier trial date. And they did. They got a much cleaner shot with a breach of contract case than a fraud case. A fraud case is harder to prove. And so they reaped those advantages. There were more advantages, Your Honor. There were many more. One was, they would have had to elect during the course of that trial, probably a closing argument. And you would choose one alternative, but you abandon the other. And that's very significant. They were relieved of that choice. And then finally, as they noted over and again to the district court, they had their fraud claims, their misrepresentation claims as backups. If they lost the breach of contract, they still could have gone back and tried these other claims as backup. So they had great advantage in the bifurcation. And when it came to severance and appeal to this court, it was very attractive. They argued for the severance because they wanted a quick appeal and they wanted their money. And that enabled them with the entry of judgment to obtain $28 million, $274,000, $235.79 plus interest they got by getting that quick entry of judgment, the affirmance and the satisfaction. And now having obtained all the benefits of that, they don't want any of the burdens. They want to collaterally attack the bifurcation and the severance and their own satisfaction in this proceeding here. And Your Honor, you have many doctrines that prevent them from doing that. They shouldn't get to it in the first instance by the fraud and tort issue, but they shouldn't be able to do it by election of remedies, by acceptance of benefits, by judicial estoppel, or by res judicata, which we argued below and would also prevent these fraud claims from proceeding. If the plaintiffs had lost regard to the first trial, would they be able to proceed on the second one? They thought so and the judge thought so. And I think they probably could have because what they would have said is, okay, these statements were not given with intent, the intent to contract. And we lose on that, but we still have the case that the statements were made by these individuals without the intent to contract and they would have had a fraud claim based on the benefit of the bargain. So they could have made that case if they could get by the tort contract distinction and they could have made the case in a jury trial if they were arguing both, but they would have to elect. They'd have to take a gamble that they were going to win on the misrepresentation. And they had to take a gamble that by rejecting one or the other, they lost forever. And the law won't count against that. Can I just ask you a quick question about choice of law? We've been talking mostly about Delaware law, but then sometimes you refer to Maryland law. The district court applied Delaware law. And is anybody challenging that on appeal? Not that I'm aware of, Your Honor. I think the plaintiffs said in their brief, very much unlike what they said below, that they thought Maryland law should apply. So I can't say that no one's challenging that. But Judge Massetti had said it's Delaware law that governs the substance of this. It's where the tort occurred and we're applying substantive issues. And there's also the choice of law provision, right? In the contract. Correct. And that dominates as well, particularly under the circuit's view of choice of law. Mr. Shady, do you have some further arguments to make? You can rest on your briefs with the statute of limitations. I better not, Your Honor, because I have to add a point or two by way of citation. If I can explain, I'll take just a couple minutes. There are three claims that are at issue here. Sidney Bressler has filed a suit as plaintiff on a breach of fiduciary duty claim. And there are claims by the estate against Mr. Waschel and Mr. Welleseck. Now let me say that all of those claims are barred by this selection of remedies problem. The damages are complete. There's no cause of action. Isn't this argument in the nature of an alternative basis for affirmance? Exactly. And as to statute of limitations, none of those three parties, Sidney Bressler, nor Waschel, nor Welleseck, were in a tolling agreement that was signed by the other parties. The notice which is needed to have the cause of action accrued was clear. There are two parts to the contract that they alleged, and two parts to the benefit of the bargain they alleged in their tort. One is that they could proceed without collateral, but the other was that they were to get $5.5 million lent to them each year. While they say they were lulled with respect to the collateral need, there was never any indication that Wilmington Trust was going to lend $5.5 million per year. They didn't. So there was clear notice of controversy there. It seems to me that the close question, or at least a I wouldn't say close, but at least a question exists insofar as a failure to sue. Interesting situation. I mean, I hadn't thought about it in terms of Wilmington being trustee, Wilmington being lender. Lender is found guilty or found to have breached this contract, and therefore it's liable. The question then comes up, should trustee have sued lender? And normally, trustee should sue lender when there is a breach of contract. But it's almost like Wilmington has to go on one side of the table and then jump back on the other side of the table. But that's a consequence when they chooses to be both. At some point in time, maybe the law is inherently believes somebody has to sue somebody, and you've got to sue yourself if you breach this contract. There are a couple of points on that, Your Honor. Their argument basically is that Wilmington Trust had to sue itself for not performing the contract as the plaintiffs thought they should. If that's enough to double the statute of limitations, it's one that can be made in almost every breach of trust. When does the statute of limitations run on a failure to file? Isn't that the end of that Well, they're doubling up two, three-year periods by saying that Wilmington should have sued itself for failing to perform the contract that there was a dispute about. So this argument that they've got is circular. But more to the point, under clear law, a party can't sue itself, even in different capacities. And that's what I wanted to add to our briefs, if I could, Your Honor. The case of BNP Paribus. Well, that comes down to say when a trustee and a lender are the same, the trustee cannot breach his fiduciary duty. He can, so far as the lender. He certainly can, but not on the performance of the contract. And the case law is clear that in other instances, a party cannot sue itself, and that's 949 F sub 2, 486, and a long exposition there of 498 to 502. But here's the additional point. The trust law is very clear that if the beneficiary wants a suit filed, he or she must demand it. The whole shareholder derivative doctrine of law is based on trust law. That in order to be the And that there was no demand made. Does the trustee have a duty to disclose that to the client? To the beneficiary? Not only do they have notice here, but the contract very clearly gave notice. I was asking about the duty of the trustee insofar as the breach of a fiduciary duty. Does the trustee, as any other trust, when they have this kind of joint little arrangement, have a duty to disclose that to the client? Yes and no, because that's easy. It's easy. It doesn't require an explanation. Is there a duty? And then you can then explain why it's a watered down duty or why this duty doesn't mean anything. Yes, it had duty, but the duty was discharged because the plaintiffs knew who the trustees were, who Wilmington Trust was, what role Wilmington Trust was playing as lender and trustee of the assets. They knew all of that. The plaintiffs also knew there was a very real dispute about the performance of the contract. And here's the final thing, Your Honor. Under these documents, the plaintiffs had every right to remove the trustee. So not only did they have a duty to demand, they had what exactly they needed. They could have moved to remove the trustee and had that trustee file any suit they wanted. How are other cases handled like this? This can't be the only instance this has happened. When I saw it, it was new to me. I hadn't even thought about it. Because banks do it all the time. You have trusts set up by the bank and then banks deliver. I mean, that can happen all the time. So what happens in those instances where, let's say there is a duty, a fiduciary duty to the beneficiary. In this instance, does the trustee in those instances have a duty to file a suit? No. But he has a duty to consider a demand if made. And the plaintiff has the ability to remove the trustee if he doesn't agree with what the trustee is doing. Sounds like he'd be better off if he wouldn't use the bank as his trustee. He should use another bank as a trustee and then have this one over there. That would be a different situation. So are you saying it's a bad idea to have both the trustee and the lender to be the same entity? I don't think so. And I don't think there's necessarily a conflict. But if the plaintiffs didn't like it or they thought there was a conflict developing, they could have removed the trustee. They first should have demanded. But they knew there was a disagreement about what the performance rights were under these documents. Their easy solution, which they never availed themselves, and haven't even today removed Wilmington Trust as the trustee. So they had the power to do exactly what they wanted. They didn't do it. They're coming up with this late at the 11th hour to try and salvage a claim that they're not entitled to under any of the scenarios. I come back again. I understand your argument on this statute of limitations. And it's a decent one. But I'm just not sure we need to get into it. You do not. If assuming arguendo, we were to agree with you on the merits. I think that's correct. It is an argument in the alternative. Correct, Your Honor. Do you have any further? I do not, Your Honor. Judge? No. Thank you very much. We're fine. Okay. Come on up. Thank you. I don't agree that they're in the alternative. Because no one argued below, and the judge didn't find below, that the bootstrapping rule applied to Mr. Bressler's claims, for instance, or to any of the claims against Bluchek and Washlow. That's the first thing. That's not what the judge ruled, nor could he rule. He did. I thought that was a component of, I mean, he got to it sort of the long way by relying on these procedural doctrines. But for it to work, for these to be inconsistent theories of recovery, the judge did find they're not separate theories. You're not allowed to bring a separate fraud action under these circumstances. Well, all right. But none of the bootstrapping cases, nor did the judge opinion say, they were all limited to the fact that the contracting issue was a contract between the estate and Wilmington Quad Trust, as the judge said. That's the contract. There was no contract argument involving Wilchek or Washlow or Sidney Bressler. So just technically, if I want to call it that, the judge never said, and I'm applying bootstrapping to the these claims against the trust for failure to sue. This is a late argument, by the way, the sort of the consecutive, as opposed to the current running of the statute. We made it below to Judge Resetti. He just didn't address it. Judge Harris, with respect to your question about Maryland law, the only reason we brought up Maryland law was that the judge in Wilmington below discussed bootstrapping in the context of a judicial estate, which we regarded as a potentially procedural issue, and therefore, Maryland. Just if you give me one, I hate to repeat it, Judge, and I know you're going to think I'm saying over my, I guess, rhetorical question at this point is, what is the inconsistency between our contract claim and our fraud claim? We would have produced exactly the same facts. So when my friend says that we did not have to elect a remedy, we would have presented the same facts to the jury, and we would have said breach of contract on the basis of what they said, objective test, fraud, because whatever they said, true enough, it's binding on you, but they didn't intend it at the time. You didn't object at all to the judge's bifurcation? No, for exactly that reason, Your Honor. There was nothing in the judge's bifurcation that suggested or formalized, much less suggested, that had we prevailed on contract, we would have been foreclosed from bringing our fraud claim. The judge may have been inclined, I'm sorry, Judge, he may have been inclined to that direction, but he said after the fact, as he described later, what his position was, he said, I didn't take a position one way or the other, and just to be clear. Well, what I'm saying is the fact remains, you got some significant advantages from the bifurcation order. There was no real attempt to clarify it or object or whatever, and you were willing to ride with those advantages, and you were happy enough to ride with the advantages, and maybe you could have a more straightforward trial, you could keep the advantage. It's hard to say in this sense, Judge, because obviously we had not formulated a view because the judge just brought it up. Don't you have some obligation to clarify the situation? No. Well, we did prior to, we spent 20 pages on it prior to the severance when the judge invited us to take a position on whether or not the contract claims, what effect the contract judgment had on the severance before he severed. And we spent 20 pages in a memo on May 28, 2014, saying, as we point out in our reply, the contract judgment has no effect on the remaining claims, and it didn't sever until a year later, so we couldn't have been any clearer. But my point is that there is no way that a bifurcation could have disposed of, even on a contingent basis, the remaining claims. We can throw up a lot of smoke, but it sort of comes down to a lot of cases do reduce themselves to a straightforward proposition. And I think my colleague, Judge Harris, in her opening question, kind of went to the heart of it as far as I'm concerned, which is you want all these different tort claims, most of them sounding in fraud, and there's no separate injury there, and the injury, in fact, is the identical one, which is the breach of a contractual promise. That underlies them both. And I thought the claim, it may not be technically one, but it seemed to me that the absence of a separate injury argued against allowing the tort claims to go forward. And that seemed to me to be a very difficult kind of thing to come. I said I also thought that the absence of a separate injury left you open to a preclusion ground, not as a formal matter, because you responded to me and my question was, it's the same suit. Yeah, in a certain sense, it's the same suit. But this feels to me like there should be preclusion principles involved in it. And one of the things that preclusion principles attempt to safeguard is having a whole nother jury trial, burdening the court with a whole nother jury trial, requiring the same witnesses to come forward and testify as to the same events. And it's that kind of scenario that preclusion exists to head off. And so your response to me was not satisfactory that it was, oh, it's all the same suit, because that didn't put the, that didn't set aside the values of safeguarded by preclusion, nor did it get, did it address the point of where's the separate injury that might give rise to separating the contract claims from the fraud counts. And that's that absence of a separate injury that is a very hard hill for you to climb. Can I, if I swear I'll finish in one minute, can I have one? Judge Harris, let me respond to the question about damage, about these three words. Remedy versus damage versus claim, let's say, or injury. In MHS, which the defendants cited, another Delaware case, they talked about the lack of other relief or remedies. In the Easy Links case and the Lyon cases that they cite under bootstrapping, they talk about the fact there are different damages. The injury question is sort of a construct from them, not necessarily from the Delaware courts. The principal case that we rely on did exactly what we say should happen here, which is where the court explicitly found that the claim facts were the same, the compensatory damage were the same, but the fraud claims with their punitive damages are going to go to the jury. And in that case, the only objection or challenge that the defendants ever made to that case was, they said, it's not a reliable case because you can't send punitive damages to a jury in the absence of a fraud claim. But that's because they misread the case. The court was denying a motion to strike the punitive damages. And in its ruling, it said, we're sending the punitive damages claim to the jury on the fraud and fraud in the inducement claim. So Delaware law supports what we're trying to do. Judge, with respect to your last point, whether or not it's preclusion or law of the case or election of remedies, underlying it all has to be some inconsistency between the two theories. There has to be some assertion that we're riding with one theory, which is inconsistent with our new theory. And our position throughout has been that we are not going to induce a single fact inconsistent in the fraud claim because we didn't have to prove nor could we prove what the defendant's actual subjective intent was at the time. It's not relevant, not admissible, it's not probative. The basic concept that a breach of contract is not automatically a tort does not depend on inconsistency. Correct, but the question is... That basic proposition does not turn on inconsistency. At any rate, we've given you a bit of extra time here. I appreciate it. And if Judge Harris or Judge Wynn has additional questions, I'm more than happy to listen. Alright, well we thank you very much. Thank you, Your Honor. We will adjourn court and come down and greet counsel. Thank you, Your Honor. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, James A. Wynn Jr., Pamela A. Harris